JOHNS ET AL. *v.* JOHNS ET AL.

STATUTE OF FRAUDS.— *Verbal Contract to Convey Lands, in Consideration of Lifetime Support.*— *Possession.*—*Part Performance* —*Partition.*—The owner of certain lands, being in possession thereof as his home, verbally agreed with his sons, then living with him, that, if they would support him and his wife, during his life, he would convey the same to them. This they faithfully performed, having complete control of the land, and improving and clearing the same, but continuing to live with their father as before,

and without any actual delivery of possession. The father having died intestate, without making the promised conveyance. an action of partition was brought by the widow, against the sons and other heirs of the intestate, resulting, over a cross complaint by the sons, alleging title in them by virtue of such facts, and over proof of the same, in partition amongst all the parties in the shares fixed by the statute of descents.

*Held,* that there was no part performance of the verbal contract, sufficient to take it out of the statute of frauds.

From the Boone Circuit Court.

*T. J. Terhune, F. M. Charlton* and *T. Peterson,* for appellants.

*C. C. Galvin,* for appellees.

NIBLACK, J.—This proceeding was commenced by Rachel Johns, widow of Joseph B. Johns, deceased, against Jacob B. Johns, Benjamin F. Johns, Dulcena Johns and Surepta Emmert, for the partition of one-half of a fractional quarter section of land in Boone county, the said Jacob and Benjamin being the children, and the said Dulcena and Surepta being the grandchildren, of the said Joseph B. Johns.

The said Jacob and Benjamin, after answering in general denial, set up, by way of cross complaint, that they were the owners of the land, of which partition was demanded, subject to a life-estate in one-third thereof in the plaintiff; that, in 1860, the said Joseph B. Johns, being then the owner of said land, sold and agreed to convey the same to them, in consideration that they would keep, support and maintain the said Joseph B. Johns and the plaintiff during the natural life of him the said Joseph ; that, in pursuance of such contract, they, the said Jacob and Benjamin, went into the possession of said land, and made valuable and lasting improvements thereon, and kept, supported and maintained the said Joseph and the plaintiff, until the time of the said Joseph's death, in 1876. Wherefore the said Jacob and Benjamin demanded a conveyance of said land.

The defendants Dulcena and Surepta, being minors, answered, by their guardian *ad litem,* both the complaint and the cross complaint, in general denial.

The plaintiff also answered the cross complaint of the said Jacob and Benjamin, in general denial.

The court trying the cause found in favor of the plaintiff, and, over a motion for a new trial, decreed partition substantially in accordance with the prayer of her complaint, directing one-fourth of the land to be set off to the said Dulcena and Surepta, and the remaining three-fourths to the said Jacob and Benjamin, subject to the life-estate of the plaintiff as above stated. Partition as decreed was afterward made, and confirmed by the court.

The said Jacob B. Johns and Benjamin F. Johns have appealed, and assigned error upon the refusal of the court to grant them a new trial, alleging the insufficiency of the evidence to sustain the finding of the court.

It may be said to have appeared from the evidence, that the decedent, Joseph B. Johns, in September, 1858, received a conveyance for the land in dispute from one John Stribley and wife ; that, at the time of such conveyance, he, the said Joseph, had probably been in the possession of the land for several, if not a good many, years ; that, after receiving such conveyance, he continued in such possession, with his family, residing upon the land, until the 4th day of October, 1876, the time of his death ; that, at the time of this conveyance, the said Jacob and Benjamin were under twenty-one years of age and resided with their said father, as members of his family, and that they continued to reside with him on the land, on which was a farm, until his death, the said Benjamin continuing to live in the same house with him and the plaintiff ; that, from some time previous to 1860, not fixed by any witness, and until his death, the said Joseph B. Johns was a cripple, by rea-

son of an injured arm, and was incapable of performing much manual labor; that, from the time the said Jacob and Benjamin became large enough to work as farm hands, they worked upon, and had the principal charge of, the cultivation of the farm, and, after 1860, seemed to have the principal charge of the farm, and their father's business generally, doing whatever was apparently necessary for his comfortable support, and that of his family, and clearing up some additional ground and making other improvements on the land; that, during the last sixteen years of his life, the said Joseph continued, as he had previously done, to do errands and light work about the farm, occasionally during that time looking after the payment of taxes upon, and other business about, the farm; that at the time of the trial, which was in the Autumn of 1877, the said Jacob and Benjamin were probably between thirty-five and forty years of age; that, during the last years of his life, the said Joseph had frequent, and in some instances often repeated, conversations with some of his neighbors, in which he said, in substance, that he had given his farm to his said sons, Jacob and Benjamin, to take care of and support him and his wife during his life, and that, at his death, the farm and all his personal property were to go to them and be theirs; that at one time he assigned as a reason for not having made a will, that he had already disposed of all he had, and had arranged that at his death all his property was to go to his said two sons; that the said Jacob and Benjamin had resided with their father on the farm from their infancy, and that, during the last sixteen years of their father's life, no visible change had taken place, either in the possession or the ownership of the farm; that upon several occasions the said Joseph stated that his said sons had taken good care of him, and were doing an excellent part by him, there being no pretence upon the trial of any thing contrary to

such statements; that, besides his said two sons, the said Joseph left as his descendants a daughter Mary, intermarried with one Henry White, and the said Dulcena and Surepta, only children of another daughter, who had died previously to the time of his death, and that the said Mary, with her husband, had, since the death of her father, quitclaimed her supposed interest in the land in controversy to the said Jacob and Benjamin.

It is claimed by the appellants that, upon the facts as thus disclosed by the evidence, they were fairly entitled to a finding in their favor, and to a specific performance of the parol contract set up in their cross complaint, and that, consequently, the court erred in overruling their motion for a new trial.

To take a parol contract for the sale of lands out of the statute of frauds, it must be shown, amongst other things, that the purchaser went into possession under the contract of sale. The mere continuance of a former possession, referrible to some other origin or authority, is not sufficient. Story Equity, secs. 762, 763; *Moore* v. *Higbee*, 45 Ind. 487; *Carlisle* v. *Brennan, ante,* p. 12.

In this case, it was not shown that the appellants went into possession of the land in suit under the alleged contract of sale; nor, indeed, that they went into the full and exclusive possession of the land at all, at any time during the lifetime of their father.

Under such circumstances we can not say that the court erred in its finding upon the evidence.

The judgment is affirmed, with costs.

Petition for a rehearing overruled.