Argued February 17, decided March 3, 1914.

## TONSETH v. LARSEN.*

(138 Pac. 1080.)

**Specific Performance—Contracts Enforceable—Parol Contracts—Part Performance.**

1. To maintain a suit for specific performance of a parol contract to purchase real estate, the plaintiff must have been placed in possession under the contract, and it is not sufficient that he continued a possession begun under a prior tenancy or other arrangement.

**Gifts—Inter Vivos—Parol Agreement to Make Gift.**

2. Where plaintiff, as tenant, was paying $60 a year as rental for a half interest in premises, an oral promise to convey the interest to

---

*On the question of specific performance of oral contract to convey real estate in consideration of making improvements, where possession was not taken, see note in 33 L. R. A. (N. S.) 534. And as to the sufficiency of possession alone as ground for granting specific performance of parol gift of, or contract to convey, real property, see note in 8 L. R. A. (N. S.) 870.     REPORTER.

him if he would pay the taxes and assessments, which amounted to less than the rental, was merely an oral agreement to make a gift.

**Specific Performance—Agreements Enforceable—Agreement to Make Gift.**

3.   Though the doctrine of part performance applies to oral gifts as well as to contracts, specific performance of an agreement to make a gift of real estate will not be enforced unless possession was given to, and taken by, the donee, and valuable and permanent improvements made thereon.

**Specific Performance—Agreements Enforceable—Agreement to Make Gift.**

4.   A parol agreement by defendant to convey a half interest in premises to plaintiff, if he would pay the taxes and assessments thereon, will not be specifically enforced, where the amount of taxes and assessments actually paid by plaintiff are less than a reasonable rental, and plaintiff makes no offer to repay defendant the amount of bonded street assessment paid by the latter after such agreement, and plaintiff has no valuable or permanent improvements on the property.

     [As to specific performance of contract to make will, see note in Ann. Cas. 1914A, 399.]

From Multnomah: Henry E. McGinn, Judge.

Department 2.   Statement by Mr. Justice Bean.

This is a suit by Birger Tonseth against H. Larsen, Mary Larsen, his wife, P. W. Thorsen and Clara Thorsen, his wife, for the specific performance of a contract to convey an undivided one-half interest in lots 5, 6, 7, and 8, in block No. 4, Larsen's Addition to the City of Portland, Oregon.   The trial court rendered a decree in favor of the defendants, and the plaintiff appeals.

Plaintiff, Birger Tonseth, a son in law of the Larsens, went into possession of the lots in question as a tenant of the defendants Larsen about three years prior to the alleged contract.   He was a widower and engaged in the floral business.   On the 1st day of April, 1903, H. Larsen and Mary Larsen, his wife, entered into a written contract with Cornelius Tonseth and wife for the sale of a one-half interest in the lots in question.   Cornelius Tonseth agreed to pay $250 cash on delivery of the agreement, and $750

within five years from date thereof, with interest, and further agreed to pay all municipal assessments, all taxes levied upon the premises, and to keep the property insured in favor of the Larsens for $500. Cornelius Tonseth carried out the terms and conditions of this agreement, and on July 18, 1910, the Larsens executed a deed to him. Prior to the alleged contract, Birger Tonseth had been leasing three greenhouses upon the property, and for the last year had paid $120 as rental.

Plaintiff alleges that, at the same time and place that the Larsens entered into the contract with Cornelius Tonseth and wife for the sale of one half of the property, they also entered into an agreement with him whereby they promised and agreed to deed to him an undivided one-half interest in the lots described, provided that he would pay all the taxes and improvements which might be levied against said lots, which provision was agreed to be the consideration for the property. Birger Tonseth having married again, about two years after the making of the deed to Cornelius Tonseth for one half of the lots, the Larsens conveyed the other one half to P. W. Thorsen, another son in law, and Clara Thorsen, his wife. P. W. Thorsen notified Cornelius Tonseth that he had purchased one half of the property and should expect rent from May 1, 1912. After considerable correspondence between Thorsen and the attorney for Cornelius Tonseth in regard to leasing one half of the property, or dividing the same, Birger Tonseth demanded a deed from the Larsens, and, upon being refused, commenced this suit.

The defendants deny the contract with plaintiff, and further pleaded that no note or memorandum in writing signed by said H. Larsen, or by any person, was

ever made of any such alleged contract, or of any contract.                                          Affirmed.

For appellant there was a brief, with an oral argument by *Mr. Cicero M. Idleman.*

For respondent there was a brief over the name of *Messrs. Fulton & Bowerman,* with an oral argument by *Mr. Charles W. Fulton.*

Mr. Justice Bean delivered the opinion of the court.

After the making of the written contract between Cornelius Tonseth and the Larsens, April 1, 1903, the Tonseth brothers continued in possession of the property and in business as partners. Plaintiff paid the taxes, which amounted on an average to about $30 per year, $15 for one half, and also a sewer assessment of $54.35. He made one annual payment on a street assessment. On January 8, 1912, Mr. Larsen paid the bonded street assessment against one of the lots in the sum of $360.18, no part of which has been repaid or tendered. After the alleged contract, the city widened a street, necessitating the taking of 15 feet from the property, for which the city paid to Larsen $180.

Plaintiff, as witness in his own behalf, states the contract, as he claims it, as follows:

"Well, my brother and I wanted to buy the whole lots, and Mr. Larsen's price was $2,000, which I considered was an outrageous price, and I told Mr. Larsen so at the time, so he says, 'I will tell you what I will do; I will sell one half to your brother, and, if you will pay the street improvements and the taxes, I will give you the other half.' I said, 'That is all right.' Well, then we signed up the agreement with my brother for the other half, and Mrs. Larsen was present at the time, and it was all talked over at the same time, and Mrs. Larsen she spoke up and she said ('I

remember that distinctly), she said, 'I will see to that, that you will get it.' Those were her very words.''

Cornelius Tonseth testified to substantially the same effect, stating that Larsen said that he would ''deed'' the property to his brother. Plaintiff testified that Larsen had not exercised control over the property, ''not that you would notice,'' since 1903; that he (Birger Tonseth) had been in control of it. After Cornelius Tonseth purchased one half of the property, Birger paid no rent. It appears that they never built on the four lots, but laid pipes to the greenhouses, improved the plumbing, made improvements on adjacent property, and built a coal-bin on the lots. The defendants offered no testimony. Mrs. Larsen at one time stated that she supposed that Mr. Larsen had changed his mind in regard to giving an interest in the lots to plaintiff.

It is contended on behalf of plaintiff that the payment of the taxes and sewer assessment is a part performance of the contract so as to take the same out of the statute of frauds; that Thorsen and his wife knew all the conditions of the contract with plaintiff; and that they took the conveyance with notice of plaintiff's rights. It will be noticed that there was no change in the possession of the property at the time of making the alleged contract, except that Cornelius Tonseth engaged in business with plaintiff; the brothers occupying the property jointly. It is not contended by plaintiff that he made any considerable improvements upon the lots. It will be noticed, also, that in his statement the time for the conveyance to him of one half of the lots is left indefinite. It is claimed by counsel for plaintiff that the conveyance was to be made at the time of the conveyance to Cornelius Tonseth of the other one half. It appears, however that, although these brothers were in partner-

ship and occupying the property together, there was no request for a deed to be made to Birger Tonseth at the time the one was executed to Cornelius. No consideration for the deed is claimed to have been agreed upon, except that the plaintiff undertook to pay the taxes for municipal improvements assessed against the property. It is the contention of counsel for defendants that in order to justify a decree for the performance of a parol agreement, required by the statute of frauds to be in writing, the contract must be certain and definite, an the acts of part performance clearly established by the proof (26 Am. & Eng. Ency. Law (2 ed.), p. 59); and that plaintiff's case, as made does not meet this requirement; that the contract amounts to no more than an oral contract to make a gift of real estate at some indefinite time.

1. In the case of *Brown* v. *Lord,* 7 Or. 302, this court adopted the rule announced in *Mahana* v. *Blunt,* 20 Iowa, 144, to the effect that the continuance in possession by a tenant cannot be deemed such a part performance or taking of possession under a contract to purchase as to take the case out of the statute of frauds. The possession must unequivocally refer to and result from the agreement. At page 310 of the opinion of 7 Or., the court said: "This court held in the case of *Odell* v. *Morin,* 5 Or. 96, which was a suit for the specific performance of a parol contract for the sale of land, that 'the contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the efforts to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it.' "

In 36 Cyc. 691, the rule is stated thus: "The land which is the subject matter of the contract must be

clearly identified; the price or other consideration must not be uncertain; and, if the sale is on credit, the time for payment should be clearly proved.''

2. From a careful examination of the evidence, we think that the agreement amounted to no more than an oral agreement to make a gift. Theretofore the plaintiff had been using the property and paying a rental of as high as $120 per annum. One half of said rental would amount to $60 for the use of the undivided one half. The taxes and sewer assessment paid by the plaintiff would amount to less than the rental.

3. The doctrine of part performance applies to oral gifts as well as to contracts; but specific performance of an agreement to make a gift of real estate will not be enforced unless possession was given to and taken by the donee, and valuable and permanent improvements were made thereon. The rule is stated in 36 Cyc. 682 as follows: ''To authorize specific enforcement of oral gifts there must be both possession taken and improvements made on the part of the donee.'' Also: ''The improvements must have been made on the faith of the gift and be exclusively referable thereto.'' On page 684 (36 Cyc.) it is stated that improvements must be valuable and permanent.

In order to maintain a suit for specific performance of a contract to purchase real estate which rests in parol, it must appear that the plaintiff was placed in possession of the premises under the contract. It is not sufficient that he continued a possession begun under a prior tenancy or other arrangement. In 36 Cyc. 659 we find: ''Possession, in order to be an act of part performance, either alone or in connection with other acts, is subject to several requirements. First, it must have been taken in pursuance of the contract. Further, it must be exclusively referable to the

contract; that is to say, it must be such a possession that an outsider, knowing all the circumstances attending it, save only the one fact, the alleged contract, would naturally and reasonably infer that some contract existed relating to the land of the same general nature as the contract alleged.'' The important application of this rule is where a possession is begun before, and continuing after, the making of the oral contract. Special continuance in possession does not satisfy the tests of an effective act of part performance, since it does not point to a new contract, but may be accounted for by reference to the former right or title, also since there has been no change of position on plaintiff's part which could work a fraud upon him on refusal of specific performance. A continuance in possession of land by a tenant will be referred to his original tenancy, even though the original term has expired; therefore a tenant's continued possession is not an act of part performance of his contract to purchase from his landlord: 36 Cyc. 661; *Wilmer* v. *Farris,* 40 Iowa, 309. In the latter case the contract sought to be enforced rested in parol. The parties to the contract were partners. The only alleged change of possession was that plaintiff claimed to withdraw from the management of the partnership business, leaving the defendant alone in possession of the property and business. It was held that that did not show that the defendant had taken and held possession under and by virtue of the contract so as to take the case out of the statute of frauds: See, also, *Hutton* v. *Doxsee,* 116 Iowa, 13 (89 N. W. 79); *Johnston* v. *Glancy,* 4 Blackf. (Ind.) 94 (28 Am. Dec. 45); *Lake Erie & W. R. Co.* v. *Michigan Cent. R. Co.* (C. C.), 86 Fed. 840.

4. The reason for the interposition of a court of equity to enforce a parol contract for the sale of real

estate, where there has been a part performance, is based upon the proposition that equity should not aid a party to perpetrate a fraud. The evidence should show that the conduct of the defendants has been such that their refusal to perform the contract would operate to defraud the plaintiff. The plaintiff having paid no more than a fair rental for the property, and not having paid or offered to pay defendant the amount paid by him, $360.18, for the bonded street assessment, and having made no permanent or valuable improvements on the property, there is nothing to indicate that, in any event, the plaintiff would not have an adequate remedy at law, in an action for damages for a breach of the contract, if any there was. The possession was not shown to have been taken by plaintiff under the alleged contract, and, under the circumstances of this case, a court of equity should not interfere to enforce an oral agreement to make a gift of the property.

The decree of the lower court will therefore be affirmed.                                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.