Argued October 7, affirmed November 12, 1959, petition for rehearing denied January 26, 1960

## KRETZ ET UX *v.* HOWARD ET AL

346 P. 2d 93

*Roy Harland,* Salem, argued the cause for appellants. On the briefs were Long and McKechnie, Albany, and Rhoten, Rhoten & Speerstra, Salem.

*Orval Thompson* argued the cause for respond-

ents. On the briefs were Weatherford & Thompson, Albany.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL and REDDING, Justices.

REDDING, J. (Pro Tempore)

This is a suit for specific performance of an oral contract for the sale of real and personal property, brought by Russell F. Kretz and Bertsie M. Kretz, husband and wife, as plaintiffs, against J. Francyl Howard and Mary Howard, his wife, and their two children, Maryan Howard and James Howard. Decree was entered in favor of defendants and plaintiffs appeal.

The plaintiffs contend that the defendants agreed to sell them the following described real and personal property, to-wit:

"That part of the Thomas Monteith D.L.C. Claim No. 64, in T. 11 S., R. 3 West of the Willamette Meridian, Linn County, Oregon, described as follows: Beginning South 87°15' West 475.0 feet and North 2°45' West 30.0 feet from the Southeast corner of said Claim; thence North 28°28' West 300.00 feet; thence North 61°32' East 445 feet; thence South 28°28' East 273.0 feet; thence South 60°43' West 312.59 feet; thence South 2°45' East 62.0 feet; thence South 87°15' West 117 feet to the place of beginning, all being situated in Linn County, Oregon;

"Tuerck-MacKenzie #3 Pipe Machine with Feeder

Tuerck-MacKenzie Concrete Mixer

Tuerck-MacKenzie Skip and lift

(Above machinery to include Motors-Switches and wiring)

Repair Parts and Accessories

Pipe Cores: 1 4", 2 6", 2 8", 2 12", 1 18", including bell shoes

2 Wheel Barrows
1 Drum Mixer
1 D.T. Machine
1 2 Wheel Pipe Cart
1 4 Wheel Pipe Cart
1 Gasoline Pump
Misc. Wood Forms
16 Pier Block Forms
1 Reinforcing Roll
390 feet 15″ B.E. Pipe (Culls)
136 feet 48″ T and G Concrete Pipe, 4 foot lengths
12 feet 48″ T & G Concrete Pipe, 2 foot lengths
5 42″ Cones
5 48″ Cones
Reinforcing Cages
Reinforcing Wire."

The above-described real property, with the exception of the westerly 25 feet thereof, was formerly owned by the Valley Concrete Pipe Co. and was being purchased under a contract of sale from Courtney Johns and wife by Maryan Howard and James Howard and will hereafter be referred to as the plant property. The above-described personal property with the exception of the concrete pipe located on the premises which was subject to a mortgage held by the Bank of Albany, was likewise being purchased by Maryan Howard and James Howard under the Johns contract of sale. The westerly 25 feet of said real property, as well as other real property to the west and to the north thereof, was owned by J. Francyl Howard and Mary Howard, his wife.

J. Francyl Howard was desirous of effecting a sale of the plant real and personal property owned by his two children. A road furnishing ingress and egress to improved property located to the north which belonged to J. Francyl Howard and Mary Howard ran along the west side of the main building

located on the plant property. On February 20, J. Francyl Howard labored under the mistaken impression that the road was located on the property which he and his wife owned, when, in fact, it was located within and 15 to 17 feet east of the westerly boundary of the plant property.

Preliminary negotiations for the sale of the plant real and personal property were carried on between Mr. Kretz and J. Francyl Howard. These were in the form of letters and phone calls. At the suggestion of J. Francyl Howard, Mr. Kretz made a trip to Albany from his home in Gilroy, California, to look over the plant. Mr. Kretz phoned J. Francyl Howard on February 13 and requested him to have the electricity turned on in order that he might check the electric motors. Thereafter Mr. Kretz came to Albany and contacted Mr. Howard on Saturday, February 19, 1955. Together J. Francyl Howard and Mr. Kretz went to the plant after meeting briefly in Howard's office. After a cursory inspection of the plant, Howard gave Mr. Kretz a key in order that he might further inspect the property on the day following. Mr. Howard planned on leaving for Yachats and did not expect to return until Sunday afternoon. On Sunday afternoon, Mr. Kretz went to the Howard home. In the interim Mr. Kretz prepared an inventory of the machinery and other personal property which he observed at the plant.

The parties agreed on a sales price of $9,500 for the plant real and personal property. It was suggested that the details of the transaction be given to an escrow agent in order to reduce the agreement to writing and make it final. The escrow was also for the purpose of assisting in closing the sale.

The same Sunday afternoon Mr. Howard called

Mr. Keith Hill, the Albany manager of Willamette Title Co. After making an appointment, J. Francyl Howard and Mr. Kretz went to the Hill home. Mr. Hill was requested to go to his office and reduce to writing in typewritten form a final escrow agreement and instructions. Mr. Hill was unable to comply with this request because he was baby sitting and unable to leave his home. However, he agreed to prepare such an escrow agreement on the day following and forward copies thereof to J. Francyl Howard and Mr. Kretz. Mr. Kretz and J. Francyl Howard, in the presence of one another, each made suggestions as to what the escrow agreement should include.

Mr. Hill made notes of the information furnished him at this conference. These notes were introduced in evidence. Also in evidence are a rough sketch prepared by Mr. Kretz of the real property and an inventory of the personal property prepared by Mr. Kretz, both of which were given to Mr. Hill on Sunday afternoon, February 20, in the presence of J. Francyl Howard. Upon the trial Mr. Hill testified as follows:

"Q Was there any discussion about the amount of real property involved in this sale?

"A There was. Mr. Kretz stated he had been out to the property and had taken a look at the property and that he considered he would like to have 25 additional feet on the other side of the existing right of way. However, at that time both Mr. Kretz and Mr. Howard agreed that they were not just sure where that property was.

"* * * * *

"Q I see. Did Mr. Howard say on February 20 he would sell him that roadway subject to that easement?

"A That is what was considered to be the 20 foot—— I don't recall exactly whether he said

that or not. There was some discussion at that time as to whether that road was the westerly boundary of Valley Concrete Pipe Company or not, and I was to draw up the description, and we were to determine if that was correct then. As I said, I told them I did not believe that was the boundary line.

"Q   The boundary line of what?

"A   The easterly boundary line of the Concrete Pipe Company property.

"Q   I see. The easterly boundary?

"A   I beg your pardon, the westerly boundary.

"Q   Well, was there anything else said about the easement?

"A   As to the easement, to the best of my recollection, they said we would get the instructions together and see about that.

"*   *   *   *   *

"Q   Did either party give any instructions to you on that date as to what you were to do?

"A   Yes. Both instructed me I was to draw the necessary escrow instructions so they could take them and approve them and make any changes necessary."

"*   *   *   *   *

"Q   And neither party signed them at that time?

"A   Neither.

"Q   And Willamette Title Company, your company—— Do you operate on verbal instructions?

"A   No sir.

"Q   It was the agreement expressed to you a written agreement would be examined?

"A   Yes.

"Q   And both could have then the opportunity of inspection and correction?

"A   Yes.

"Q   And there would be no agreement until signed by both of them?

"A   That's right."

On the same afternoon in the presence of J. Francyl Howard, Mr. Kretz gave to Mr. Hill a check in the sum of $1,000 made payable to Willamette Title Co. and stated that he would mail the remaining $8,500 of the purchase price to Mr. Hill in three or four days. Before returning to his home in Gilroy, California, Mr. Kretz returned the key to the property to Miss Howard.

On the day following, Mr. Hill prepared and mailed to Mr. Kretz an escrow agreement. On February 22, and again on February 28, Mr. Kretz communicated with J. Francyl Howard by long distance telephone, advising him that he would require a strip of land to the west of the road 50 feet in width, rather than 25 feet in width as specified in the escrow agreement. In his long distance telephone conversation with J. Francyl Howard, Mr. Kretz advised Howard that he had acquired some machinery which he planned on installing in the Albany concrete pipe plant. The plaintiffs do not contend that J. Francyl Howard agreed to convey a strip of property 50 feet in width to the west of the road. In the meantime Mr. Kretz learned that some of the concrete pipe listed in the inventory which he prepared and in turn listed in the unsigned escrow agreement prepared by Mr. Hill had been sold on execution sale to satisfy a mortgage lien held by the Bank of Albany. Mr. Kretz suggested that the sales price of $9,500 be reduced by $250, because of the sale on execution of such pipe.

Mr. Kretz, on or about March 5, returned to Albany, but was unable to contact J. Francyl Howard until March 8 or 9 when it was agreed they would meet with Mr. Hill on the 10th. At the meeting in Mr. Hill's office on March 10, J. Francyl Howard advised Mr. Kretz that he was unwilling to convey to

him any property to the west of the road. Where-upon, Kretz gave Mr. Hill an additional check for $8,500, made payable to Willamette Title Co., stating that he considered the sale consummated and en-forcible and intended to go into possession of the property. While the evidence in connection there-with is conflicting, J. Francyl Howard testified that at said meeting he insisted and proclaimed that the sale had not been consummated and instructed Mr. Kretz not to go into possession. The following day Mr. Charles Hafner, an employee of Mr. Kretz, at Mr. Kretz's direction, gained entrance to the property with the use of a hacksaw by cutting a chain barri-cading the road or street furnishing entrance to the property and likewise cutting the padlock securing the front door to the building on the property. Mr. Kretz seeks to explain the use of a hacksaw in gain-ing entrance to the property on the grounds that he feared there might be keys to the front door padlock in the hands of several people, and for that reason he wanted to put a different padlock on the door for security purposes in anticipation of installing addi-tional tools and machinery in the plant. The escrow agreement prepared and submitted by Mr. Hill was never signed by any of the parties.

The plaintiffs assert that they paid the entire purchase price to the escrow agent and thereafter took possession of said premises, and while in posses-sion and in reliance upon said contract, they pur-chased a drainpipe machine, expended money to have the electric wiring checked in the plant, had the electricity turned on, had the property insured, in-stalled an electric heater in the office, ordered addi-tional equipment for the manufacture of concrete pipe, became obligated for further special equipment

in renovating the plant, and made other improvements, at their expense and to their detriment. Plaintiffs contend that their alleged part performance as hereinabove set forth is such as to avoid the statute of frauds.

In refusing to decree specific performance of the alleged parol agreement for the purchase and sale of said real and personal property the trial judge found that plaintiffs failed to prove by a preponderance of the evidence that the minds of the parties met upon all the essential terms of the alleged agreement, and that the plaintiffs failed to prove by a preponderance of the evidence that the plaintiffs had ever reached a complete agreement on the sale and purchase of said real and personal property with said defendants, or with any of them.

Plaintiffs contemplated using the property which they sought to purchase as a plant for the manufacture of concrete pipe, and because of the noise incidental to the operation of such a plant, desired an office located other than in the plant building and as a location for a contemplated building for a plant office in the beginning desired a strip of property 25 feet in width adjoining the plant property on the west. Mr. Kretz and Mr. J. Francyl Howard both erroneously believed that a 25-foot strip so located would encompass a section of the road heretofore referred to. This was unacceptable to J. Francyl Howard. Mr. Kretz countered by seeking a conveyance of the plant property, together with the property to the west, including the road, and a strip to the west of said road 25 feet in width, reserving, however, unto J. Francyl Howard an easement over said roadway. Plaintiffs contend that J. Francyl Howard agreed to sell and convey the plant property,

together with the ground upon which the road was located and a strip of ground 25 feet in width to the west of the road. While conceding that the 25-foot strip was discussed, the defendant J. Francyl Howard maintains that there was no meeting of the minds upon the sale of said strip or upon the terms thereof; that is to say, whether it was to be included without consideration in addition to the sales price of $9,500 agreed upon. J. Francyl Howard steadfastly maintained that he did not agree and under no circumstances would agree to convey the property on which the road was located.

A reading of the transcript of testimony leaves the trier of the facts with uncertainty as to whether there was a meeting of the minds of the parties on a number of the terms essential to the alleged contract. There is uncertainty as to how much land was to be included in the contemplated sale. The exact location of the land is likewise uncertain. We are left in doubt as to whether any of the land lying west of the roadway was to be included in the proposed sale. We are likewise left in doubt as to whether the roadway was to be excluded from the conveyance and if not what the terms and conditions of the easement reserved were to be. There is likewise uncertainty as to the amount of personal property that was to be included in the proposed sale. Kretz contended that all pipe upon the premises was to be included except that pipe belonging to the Mountain States Power Co. and certain drainpipe reserved by the defendant J. Francyl Howard and to that end prepared an inventory in which all of the pipe except for such exclusions was included. On the other hand, J. Francyl Howard testified that he was discussing a sale only of the pipe which his son and daughter were pur-

chasing from Johns, and that this did not include pipe located upon the property which was subject to a mortgage held by the Bank of Albany.

■■■ A meeting of the minds upon each and all essential elements is indispensable to the creation of a contractual relationship. Certainty is required when it is sought to overcome the effect of the statute of frauds. The rule is announced in *Killgreen v. Western Loan and Building Co.,* 155 Or 408, 64 P2d 526, where the court cited with approval from *Le Vee v. Le Vee,* 93 Or 370, 181 P 351, 183 P 773, as follows:

> "The evidence is not of that degree of clearness and certainty required when it is sought to overcome the effect of the statute of frauds. The general rule is that the plaintiff must prove the agreement as well as his part performance of it, clearly and unequivocally by the preponderance of the evidence. If the testimony taken all together is equivocal in its effect, so that it is left uncertain which is the true solution of the question, the plaintiff has failed to make his case by the preponderance of the testimony."

The rule is restated in *Reed et al. v. Montgomery,* 180 Or 196, 175 P2d 986, as follows:

> "* * * Discussions, no matter how adequate, do not necessarily produce contractual relationships, but normally no contractual relationship is brought about as the result of discussion unless it is carried on to such an extent that the minds of the parties meet upon all of the essential terms of the proposed venture."

■ To avoid the effects of the statute of frauds the testimony must be clear and explicit as to all essential elements of the contract pleaded. This condition has not been fulfilled in the present instance; wherefore, the decree of the circuit court must be affirmed.