Argued April 16, modified June 10, rehearing denied September 9, 1919.

## LE VEE v. LE VEE.

(181 Pac. 351.)

**Frauds, Statute of—Parol Contract—Part Performance—Tenancy in Common.**

1. Possession by tenant in common to constitute such part performance of his cotenant's agreement to sell her interest in the common property as to take the contract out of the statute of frauds must result in such a change of relation between the parties as would challenge the attention of anyone seeing the change, and would indicate that some contract had been made.

**Specific Performance—Parol Contract—Part Performance—Sufficiency of Evidence.**

2. In son's suit for specific performance of mother's parol contract to convey her interest in land owned by mother and son as tenants in common, evidence of son's possession of land under the agreement *held* not of that degree of clearness and certainty required to overcome the effect of the statute of frauds.

**Specific Performance—Parol Land Contract—Part Performance—Evidence.**

3. Generally a tenant in common, suing for specific performance of his cotenant's parol agreement to convey his interest in the common property, must prove the agreement, as well as his part performance of it, clearly and unequivocally by the preponderance of the evidence.

**Frauds, Statute of—Avoidance of Contract—Degree of Proof.**

4. The statute of frauds is stringent in its provisions, and to avoid its effect the testimony must be clear and explicit, showing a state of facts referable exclusively to the contract pleaded.

**Appeal and Error—Review—Disposition as to Defendants Who Do not Appeal.**

5. Where some of the defendants against whom judgment is rendered appeal and others do not appeal, the appellate court, in holding

lower court in error, will reverse judgment only as against the defendants who appealed.

### ON REHEARING.

**Tenancy in Common—When Devisees Become Tenants in Common.**

6. Where a mother died seised of land with her son as tenant in common, the other children, the will devising to the son a life estate in the mother's share of the tract, subject to payment of certain charges, became tenants in common with the son; joint tenancy having been abolished by Section 7175, L. O. L.

**Tenancy in Common—No Tenant can Do Act Affecting Title of Another.**

7. Tenants in common hold their interest in the realty independently of each other, and neither one can do an act respecting the title which will bind the others.

**Tenancy in Common—Grantee of Tenant in Common Becomes Such.**

8. The grantee of a tenant in common becomes merely a new tenant in common with the remainder of the original holders.

**Tenancy in Common—Single Cotenant can Recover Possession of Whole Land Against Stranger.**

9. As against a stranger, one tenant in common may recover possession of the whole of the land held by himself and his cotenants.

**Appeal and Error—Reversal as to Some Defendants Did not Affect Those not Appealing.**

10. Where a mother for consideration agreed to convey to a son her share of land owned by them in common, and after her death he sued his sisters and brother, to whom the mother had devised the land subject to a life estate in his favor, and some of the children made no resistance, defaulting or withdrawing appearance, and decree was rendered for the son against all the other children, part of whom appealed, the reversal of the decree as to the children who appealed did not necessarily work a reversal as to those who did not contest the complaint.

[As to rights of cotenant, see note in 100 Am. St. Rep. 652.]

From Benton: GEORGE F. SKIPWORTH, Judge.

Department 1.

The plaintiff and his mother during the latter years of her life were tenants in common of a 32-acre tract in Benton County. The complaint is to the effect that in 1897 the mother in consideration of the plaintiff's promise to take care of her during the remaining years of her life, pay the expenses of her last sickness and burial and discharge a mortgage of $500 then on the

property, together with any other encumbrances existing at her death, she would sell to him the undivided half of the property, conveying it to him either by deed or will. It further states in substance that she made a deed in pursuance of that contract and deposited it in a bank with directions to hold the same as an escrow and deliver it to the plaintiff on the performance of his covenant. He claims to have taken possession of the property and made certain valuable improvements thereon and otherwise to have performed the contract by taking care of his mother, paying the expenses of her last illness and funeral and burial expenses. He says that during the year 1910 his mother, without his knowledge or consent, withdrew the escrow from the bank. She died March 4, 1913.

The defendants, who are her other children with their several spouses, rely upon a will which she made and which has been admitted to probate to the effect that the plaintiff should have a life estate in her undivided half of the land on condition that he would pay all the claims against her estate and the expenses of administration. The plaintiff avers that he has demanded of the defendants a deed to the premises, which they have refused. After a denial of any contract the defendants plead that the alleged contract was not in writing and that if there was any such agreement it was rescinded by the concurrence of the plaintiff and his mother. For a third defense they state in substance the contents of the will already referred to and say that the plaintiff in acceptance of the terms of the will paid all the claims presented against the estate and accepted the conditions of the testament, wherefore he is estopped from claiming anything under or by virtue of the contract. They also allege that the plaintiff presented to the executor

a verified claim for the sums of money said to have been paid for the mother by the plaintiff, which are identical with those he was bound to pay under the contract upon which he relies, and that this constitutes a waiver by the plaintiff of that contract whereby he is estopped from claiming anything by virtue thereof. Lastly they aver that the fair rental value of the mother's interest in the land was about $300 per annum; that the plaintiff ever since the time of the alleged agreement has had the use of the land; that his mother acted as his housekeeper for many years and performed valuable services in connection with the management of the place, for which she received no compensation, and that under all these circumstances the alleged agreement, if there was such a stipulation, was so grossly unequal and improvident that equity ought not to decree a specific performance.

The new matters of the answer are materially traversed by the reply. Affirmatively the plaintiff pleads ignorance of the law and facts which induced him to present to the executor his claim for moneys advanced to his mother. The Circuit Court heard the case and rendered a decree substantially according to the prayer of the complaint. All but three of the surviving children, defendants, either defaulted or withdrew their appearance, but those still remaining in the case have appealed.                                    MODIFIED.

For appellants there was a brief over the name of *Messrs. McFadden & Clarke,* with an oral argument by *Mr. Arthur Clarke.*

For respondent there was a brief over the names of *Mr. B. A. Klike* and *Messrs. Hewitt & Sox,* with an oral argument by *Mr. Klike.*

BURNETT, J.—Substantially the only witness for the plaintiff is himself. He narrates that he and his mother came to this state and after an unsuccessful venture on a larger farm they bought together the tract in dispute, taking title to themselves as tenants in common; that they lived together on the land for several years, she doing the housework and otherwise assisting in the management of the place and the marketing of its products, and all went smoothly until he married. The old lady, feeling herself supplanted by the daughter-in-law, left, and the plaintiff, according to his story, provided for her sustenance at various places in Corvallis and finally the mother took up her abode at the Patton Home in Portland. He says that he paid her expenses at the rate of twenty dollars per month at all of these places, as well as during a trip she made to some of the eastern states on a visit.

No effort is made to account for the contract, if it was in writing, or for the deed, beyond its withdrawal from the bank. The plaintiff does not claim to have had a copy of the agreement, if there was one, so that the question really turns upon whether there is sufficient evidence to prove a contract and, further, whether part performance has been shown sufficiently to support a decree compelling a conveyance.

As late as March 30, 1910, the plaintiff and his mother made the following agreement:

"Whereas, Chauncey Le Vee and Mary Le Vee are the owners and tenants in common of a certain 32.5 acre tract of land one mile north of Corvallis, and the said Mary Le Vee desires to go East, and it is arranged that said Chauncey Le Vee shall pay her $20.00 a month for her support, in consideration of which he is not to be charged with rent for the use of said land.

"Now, therefore, it is agreed between said Chauncey Le Vee and Mary Le Vee as follows: Said Chaun-

cey Le Vee agrees to pay said Mary Le Vee the sum of $20.00 per month for her support, said money to be sent to her at such place whatever she may be residing, and in consideration of such payment, said Mary Le Vee agrees that so long as payments are kept up, said Chauncey Le Vee shall not be liable for payment of any rent for the use of said premises. Said Chauncey Le Vee further agrees to pay the taxes on said land.

"This agreement may be dissolved by either party hereto, at any time hereafter.

"In witness whereof, the parties hereto have hereunto set their hands and seals, in duplicate, this March 30th, 1910.

"(Signed) MARY LE VEE.    (Seal)
"(Signed) C. W. LE VEE.    (Seal)

"In presence of:
"(Signed) E. E. WILSON."

It is admitted that within six months after the probate of the will the plaintiff presented to the executor his claim for moneys advanced to his mother for three years' interest on her half of the mortgage, for taxes on her half of the realty, for funeral expenses and claims and other demands discharged by him, amounting in all to $1,955.

In *Tonseth* v. *Larsen,* 69 Or. 387 (138 Pac. 1080), Mr. Justice BEAN quotes with approval from 36 Cyc. 659:

"Possession, in order to be an act of part performance, either alone or in connection with other acts, is subject to several requirements. First, it must have been taken in pursuance of the contract. Further, it must be exclusively referable to the contract; that is to say, it must be such a possession that an outsider, knowing all the circumstances attending it, save only the one fact, the alleged contract, would naturally and reasonably infer that some contract existed relating to the land of the same general nature as the contract alleged."

1. In other words, there must be such a change of relation between the parties as would challenge the attention of anyone seeing the change and would indicate that some contract had been made. The rule is thus stated in the syllabus to *Roberts* v. *Templeton,* 48 Or. 65 (80 Pac. 481, 3 L. R. A. (N. S.) 790, note):

"Where a cotenant with a part owner of real property claims specific performance of an oral contract of purchase with another owner the proof must be clear that possession was taken under the oral agreement to constitute such a part performance as to avoid the statute of frauds."

2, 3. Everything which the plaintiff claims he did in pursuance of the alleged contract, when viewed by an observer, is referable with equal force to the tenancy in common existing between the parties. No visible change was made respecting the possession of the land. Both the plaintiff and his mother lived upon it and operated it just as such holders of the title ordinarily would do. The plaintiff probably paid out money for his mother's support, but it was apparently derived from the proceeds of the crops of the land. Besides the fact that his acts already alluded to were consistent with the tenancy in common and contained nothing referring them exclusively to a contract, his other acts are utterly inconsistent with the idea that he had an agreement with his mother to buy the land. The quoted contract of March 30, 1910, is practically a lease which would not have been executed if he was holding the land as a purchaser. His act of presenting to the executor his claim against her estate for the items mentioned is likewise inconsistent with the theory that he had a contract to buy the land in consideration of those very payments. The evidence is not of that degree of clearness and certainty required

when it is sought to overcome the effect of the statute of frauds. The general rule is that the plaintiff must prove the agreement as well as his part performance of it, clearly and unequivocally by the preponderance of the evidence. If the testimony taken altogether is equivocal in its effect, so that it is left uncertain which is the true solution of the question, the plaintiff has failed to make his case by the preponderance of the testimony. It presents a situation analogous to what was said by Mr. Chief Justice McBRIDE in *Spain* v. *Oregon-Washington R. & N. Co.,* 78 Or. 355 (153 Pac. 470, Ann. Cas. 1917E, 1104):

"When the evidence leaves the case in such a situation that the jury will be required to speculate and guess which of several possible causes occasioned the injury, that part of the case should be withdrawn from their consideration."

In short, by reason of the fact that all the things said to have been done by the plaintiff are easily referable to the relation of tenants in common existing between himself and his mother, and that the act of his taking what was substantially a lease of the premises on March 30, 1910, and his presenting a claim to her administrator are contradictory of his theory of contract, he has failed to make a case preponderating in effect over that made by the defendants. The case presented is not like *Woods* v. *Dunn,* 81 Or. 457 (159 Pac. 1158). There the will made by the former owner of the land was itself a writing sufficient to satisfy the statute of frauds. Besides this, the agreement was otherwise amply proved together with its unequivocal part performance by the plaintiff.

*Stalker* v. *Stalker,* 78 Or. 291 (153 Pac. 52), cited by the plaintiff, was a case where a member of the Church of Jesus Christ of Latter-day Saints had contracted

a plural marriage, which having been declared unlawful, he placed the plural wife on a piece of land which he bought for her for a home and left her in possession, going into another state. The agreement to give it to her for a home in settlement of her probable demands against him for support was clearly proved and she remained in the exclusive possession of the premises, while he never appeared upon them afterwards. Further, his writings substantially declared the true contractual relation.

*Kelley* v. *Devin,* 65 Or. 211 (132 Pac. 535), was a case where a father contracted with his son, who was long past the age of majority, to the effect that if the son would participate in the management of his father's property during the life of the latter, he would devise to him an undivided half of all his estate. This agreement was clearly proved by at least three disinterested witnesses and there was such a change in the management of the father's affairs by the participation of the son therein that anyone seeing the difference would be put upon inquiry about a contract, as that would be the only reasonable explanation of the change in management.

*Sprague* v. *Jessup,* 48 Or. 211 (83 Pac. 145, 84 Pac. 802, 4 L. R. A. (N. S.) 410), involved a contract between strangers evidenced by the purchaser's taking possession of the realty to the utter exclusion of the seller, besides which, part of the purchase price had been paid and a memorandum in writing signed by the seller indicated that the payment was made on account of the purchase price. In their facts and circumstances all these cases cited by the plaintiff differ widely from the one at bar and are not controlling here.

4, 5. The statute of frauds is stringent in its provisions, and to avoid its effect the testimony must be clear and explicit, showing a state of facts referable exclusively to the contract pleaded. This condition has not been fulfilled in the present instance, wherefore the decree of the Circuit Court, so far as it affects the parties who have appealed and contested the complaint, must be reversed. The decree must stand as to the other defendants.                      MODIFIED.

MCBRIDE, C. J., and BENSON and HARRIS, JJ., concur.

----

Rehearing denied September 9, 1919.

PETITION FOR REHEARING.

(183 Pac. 773.)

On petition for rehearing. DENIED.

*Messrs. McFadden & Clarke,* for the petition.

*Messrs. Hewitt & Sox, contra.*

BURNETT, J.—The plaintiff claimed he had a contract with his mother whereby, in consideration of his caring for her during her life, etc., she agreed to convey to him either by deed or by will an undivided half in fee of a tract of land which they owned in common. He charges in his complaint that she violated the contract and devised to him only a life estate in her half of the tract, conditioned upon his paying her debts and a mortgage upon the land. After her death he instituted this suit against his sisters and his brother and the spouses of those married, to compel a conveyance of the property. Some of the de-

fendants made no resistance to his suit, either default-
ing or withdrawing their appearance. The Circuit
Court, after hearing the testimony on the issues pre-
sented by the parties appearing, rendered a decree
in favor of the plaintiff against all of the defendants
according to the prayer of the complaint. Three of
the sisters, answering defendants, and their husbands,
together with the executor of the deceased mother's
will, appealed, serving their notice upon the plaintiff
only. Upon consideration of the testimony and the
argument of counsel, it was determined here that the
proof offered in support of the agreement relied upon
by the plaintiff was not sufficient to establish the same.
The conclusion was that so far as it affects the par-
ties who have appealed, the decree of the Circuit Court
should be reversed but that it should stand as to the
defendants who did not contest the complaint. The
petition of appellants for a rehearing urges that the
decree should be reversed as to all the defendants, irre-
spective of whether they resisted the suit or not. In
substance their argument is that the final decree on
the merits determines the rights of the defaulting
defendants and inures to their benefit, the same as if
no decree *pro confesso* had been rendered against
them. The contention of the movants for a rehearing
is that the defendants are jointly liable, entailing a
joint decree in any event whatever; and that if the
suit fails as to one it must fail as to all.

The principle governing the matter is thus succinctly
stated in 16 Cyc. 497:

"Failure of one defendant to answer and a decree
*pro confesso* against him do not entitle plaintiff to
take the allegations of his prayer as true against him
who has answered. A final decree upon the merits
cannot then be entered either against the defaulting

defendant or those not in default, without proof of the material allegations of the prayer. And even where a decree *pro confesso* has been entered against a defaulting defendant as upon issue joined by a codefendant and trial had it turns out that the bill ought not to be sustained as to either defendant, it will be dismissed as to the defaulting defendant as well as to the defendant not in default. This rule, of course, does not apply where the allegations in the bill against the defaulting defendants and the defenses of the answering defendants have no necessary connection, so that upon the trial it turns out that a final decree on the merits against the defaulting defendants is not inconsistent with a decree dismissing the bill as against the defendants not in default.''

Sections 180 and 181, L. O. L., read thus:

180. ''Judgment may be given for or against one or more of several plaintiffs and for or against one or more of several defendants; and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side as between themselves.''

181. ''In an action against several defendants the court may, in its discretion, render judgment against one or more of them whenever a several judgment is proper, leaving the action to proceed against the others.''

6–9. It well may be conceded that as a general rule there can be but one recovery upon a joint liability, and that the release of one who is jointly liable with others will discharge his co-obligors. The fallacy in the argument for a rehearing lies in the assumption that the defendants here are jointly liable. Without dispute, the mother died seised of the title to the property in question. Naturally, unless the course of descent was changed by her will, the land would descend to her children as tenants in common. The will

itself does not appear in evidence and from the record we obtain no knowledge of its provisions beyond the fact that it devised to the plaintiff a life estate in the mother's moiety of the tract, subject to the payment of the charges mentioned. In this state of the case we are bound to treat the defendants, children, as tenants in common. Joint tenancy has been abolished in this state: Section 7175, L. O. L. Tenants in common hold their interest in realty independent of each other. Neither one can do an act respecting the title which will bind the others. Even if he essays to convey the whole estate it will operate only to pass the title to his own share. His grantee becomes only a new tenant in common with the remainder of the original holders. It is true that as against a stranger one tenant in common may recover possession of the whole of the land held by himself and his cotenants, but this is because of the only unity which is an ingredient of such an estate, viz., that of possession. In the present instance no defendant is liable directly on the contract alleged in the complaint, because neither of them is a party to that stipulation. Although its validity might be thoroughly established and decreed, no single defendant is liable for either of the others on account of its breach. He can be held only for that part of the estate which came into his possession or which he acquired by descent from his ancestor. It is analogous to the situation described in Section 485, L. O. L., which says:

"The next of kin of a deceased person are liable to a suit in equity by a creditor of the estate to recover the distributive shares received out of such estate or to so much thereof as may be necessary to satisfy his debt. The suit may be against all of the next of kin jointly or against any one or more of them severally."

10. The plaintiff has a right to secure the title for which he had contracted by conveyance from such of the defendants as would convey to him and by suit against the others. Moreover, having instituted suit against all of them, he had a right to recover from such as he could, by default or by decree *pro confesso,* and it is no concern of those who thus surrendered at discretion that the others successfully resisted his demand; neither are the latter affected by the result of the litigation as to the former. Within the meaning of the latter clause of the excerpt from 16 Cyc. 497, there is no necessary connection between the defendants inconsistent with a decree in favor of some of them and against the others.

The cases cited in support of the petition for rehearing are uniformly those in which the liability sought to be enforced was joint. For example, *Frow* v. *De La Vega,* 15 Wall. 552 (21 L. Ed. 60), the leading case cited in support of the petition, was one where fourteen defendants were charged with conspiracy to defraud the plaintiff of certain lands. Of course, in such an instance there was a joint liability. There could be but one recovery and the release of one tortfeasor would exonerate the others. The principle does not apply here, for the defendants are each liable only *pro tanto,* if at all, without reference to either of the others, and the plaintiff may enforce his claim against any one of them as he may be able to establish it, whether by their consent or otherwise, without affecting his litigation with the others. The textwriter in 15 R. C. L. 1032, after treating of the effect of judgments against part of a number of individuals who are jointly liable according to the contention of the petition before us, uses this language respecting cotenants:

"Tenants in common are not privies, and are therefore not bound by judgments rendered in actions brought by one of their cotenants respecting the common property."

As the estoppels of judgments are mutual, the rule is the same on the other hand, so that tenants in common cannot claim the benefit of a decree in favor of their cotenants. An illuminative case supporting the text on the relation of tenants in common to each other is *Allred* v. *Smith*, 135 N. C. 443 (47 S. E. 597, 65 L. R. A. 924). In that instance the maternal ancestor of the litigants had conveyed her land to one of them, G. A. Allred. After the mother's death Willie Allred instituted a suit against the grantee in the deed and succeeded in having it set aside and declared void on the ground of the mother's mental incompetence. The plaintiff in that suit afterwards joined with her other brothers and sisters in a suit against G. A. Allred to partition the land into nine equal parts, that being the number of the children in the family of the deceased grantor. After an exhaustive examination of the case the court held that the other children could claim no advantage by reason of the decree between the litigants in the suit to cancel the deed, the reason being that tenants in common were independent of each other and that neither of them could charge or estop the others, and hence neither could take advantage of anything done by the others respecting the title to the realty involved. There, as here, it was argued that as the contract by which title passed to the grantee was declared void, it was void as to everybody. The court, however, held that it was void only as to those who were engaged in contesting it.

The only concern which the executor of the will in the present instance has in relation to the real estate

is about that which does, indeed, belong to the estate of his decedent, and even then only for enough of it to pay the claims and charges against the estate after the exhaustion of personalty for that purpose. It is enough to say in that respect that he is not interested in the distribution of the realty among those entitled to claim under the will. The plaintiff is entitled to such proportion of the property as he has obtained by the *pro confesso* decree against the defendants who did not resist this suit. He is also entitled to what may come to him under the will. The remainder will descend, as provided by the will, to those of the children who successfully resisted the plaintiff's claim in this suit. The plaintiff stands in the shoes of those over whom he has prevailed.

The nonanswering defendants are not here complaining. Indeed, they are not before this court, because the notice of appeal was not served upon them. As to them he cannot, for want of jurisdiction, disturb that which they are willing should stand. We can deal only with those parties who are before us, and the successful defendants must be satisfied with the decree we have rendered. The petition for rehearing must be denied.                 MODIFIED.   REHEARING DENIED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.
93 Or. —25