Argued and submitted July 25, reversed and remanded September 10, 1986

STANDLEY,
*Appellant,*

*v.*

STANDLEY,
*Defendant,*

STANDLEY et al,
*Respondents.*

(E82-0180; CA A37719)

725 P2d 397

David V. Gilstrap, Ashland, argued the cause for appellant. With him on the brief was Davis, Ainsworth, Pinnock, Davis & Gilstrap, P.C., Ashland.

Larry O. Gildea, Eugene, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

On January 25, 1982, plaintiff commenced this action for, alternatively, breach of contract or breach of trust. Defendants Adrian and Vera Standley (defendants) moved for summary judgment on the ground that there is no disputed issue of fact as to when plaintiff's cause of action accrued and that the action is barred, as a matter of law, by the Statute of Limitations or laches. The trial court found as an undisputed fact that plaintiff was aware that those defendants had repudiated the agreement, or breached the trust, by March, 1971, and granted their motion for summary judgment pursuant to ORCP 67B. Plaintiff appeals from the judgment, arguing that there was a genuine issue as to whether she learned of defendants' intention not to perform their agreement only when it was, in fact, breached in 1978, and that the trial court erred in granting defendants' motion for summary judgment.

Plaintiff was married to Richard Standley.[1] During their marriage, Richard purchased real property in his name only from defendants, his parents. Plaintiff and Richard borrowed money from defendants and defaulted on their repayment obligations. Richard deeded the property to defendants in August, 1970, and they began to sell parcels to satisfy the debt. Defendants verbally agreed, between August and December, 1970, to reconvey any real property exceeding that necessary to satisfy the obligation. Plaintiff initiated a dissolution proceeding in December, 1970, and contemplated joining defendants to set aside the conveyance, which was absolute on its face, as having been made in contemplation of the dissolution proceeding. Plaintiff verbally agreed with defendants not to join them in the action in consideration for their promise to reconvey one-half of the property to her when the debt was satisfied.

Defendants moved for summary judgment on the ground that plaintiff was aware that defendants had repudiated their alleged agreement by March 19, 1971, and the action, commenced in 1982, was time-barred. Plaintiff

---

[1] Richard Standley is a defendant in this action, but he was not among the defendants who moved for summary judgment and is not a respondent on this appeal. This opinion will refer to him as Richard. The defendants who are respondents are Richard's parents, Adrian (aka Adrain) and Vera Standley.

opposed the motion, arguing that defendants did not repudiate their agreement and that she did not know of defendants' intention not to perform until 1978, when defendants reconveyed the property only to Richard.[2] Defendants' motion was supported by plaintiff's deposition testimony and affidavits. The deposition testimony concerned some correspondence between plaintiff's and defendants' attorneys concerning plaintiff's attempt to reduce the verbal agreement to writing. The correspondence culminated in a letter from defendants' attorney, dated March 19, 1971, which stated, in pertinent part:

> "* * * I have a letter from Mrs. A. J. Standley in which she informs me that their accountant has advised them not to enter into any agreements with Rick or Pauline in regard to the ranch. * * *

> "I can fully appreciate the accountant's concern that any agreement signed by the A. J. Standleys might be construed such that they would be considered mortgagees in possession rather than owners. I can well imagine the horrendous confusion that would arise, at the very least, and the disastrous tax consequences, at the worst."

In her deposition, plaintiff acknowledged receiving the letter. She was questioned as to what she understood plaintiff's position to be after she received it. Defendants argue that her testimony indisputably established that she understood that defendants had repudiated all agreements. Plaintiff argues that her testimony was somewhat confused but that she testified that she still felt defendants had not repudiated their agreement to transfer one-half of the unsold property to her. Plaintiff also filed an affidavit in opposition to defendants' motion, in which she unequivocally stated that defendants never repudiated their agreement to reconvey, but only refused to put the verbal agreement in written form. The trial court ruled that plaintiff's deposition "is replete with admissions acknowledging that [defendants] had no intention of fulfilling the verbal agreement" and that the statement in her affidavit, "which is clearly contradictory to her deposition," is insufficient to create a genuine issue of fact under

---

[2] Plaintiff does not argue that, even if defendants had earlier repudiated the contract, her cause of action did not accrue until defendants' performance was due because she had fully performed her obligations. Accordingly, we do not consider this theory.

*Henderson-Rubio v. May Dept. Stores,* 53 Or App 575, 632 P2d 1289 (1981).

Defendants point to the following deposition testimony to support their argument that plaintiff was aware that they had repudiated the agreement in March, 1971. These two exchanges occurred after a discussion concerning defendants' refusal to allow plaintiff and her children to remain on the property after the dissolution:

"Q. [Referring to the letter of March 19, 1971] Does that reinforce your feeling that you acquired —

"A. Yes.

"Q. — from the February 18 letter that Mr. and Mrs. — the elder Standleys were not looking out for your best interests?

"A. That's right.

"Q. And that they had no intent to enter into any agreements with you and Rick?

"A. .That's right."

Later, plaintiff testified:

"Q. Okay. So as of March of 1971 it was clear to you that Richard's parents were not going along with any of these agreements concerning the ranch, is that correct?

"A. That's correct.

"Q. There is no doubt about that?

"A. There is no doubt in my mind."

Considering those statements by themselves, and without regard to their context, we might agree with the trial court's conclusion that plaintiff's deposition testimony acknowledged her awareness of defendants' repudiation of their agreement. However, plaintiff made other statements which tend to change that conclusion. Shortly after testifying as set forth above, plaintiff testified:

"Q. Was it not — based on what you have told me about what you knew as of March and February, 1971, was it not the case that the parents had made it clear that they were not going to be bound by any agreement to reconvey any property?

"A. That's right. No, that's wrong. They only told me that I could not stay there, that they had — that is was theirs;

that they could do with it whatever they wanted to; that, in other words, you know, I had no rights.

"* * * * *

"A. I still thought that meant when the ranch was sold and the indebtedness to them was cleared up that they would still turn it back."

This exchange followed:

"Q. Well, you have told me earlier about a conference you had with Rick's parents prior to these letters being written.

"A. Okay. That conference that I had with Rick's parents was myself and them, and that was concerning whether I should sue them as co-respondents and this sort of thing, and my understanding from that conference was that they would — they would be willing to do right by us as long as I didn't sue them.

"Q. All right. I understand that, and then you said that you got the letters and you realized then that they weren't —

"A. My feeling was that they didn't care about me.

"Q. And they weren't going to live up to that promise?

"A. No, I didn't feel that they wouldn't live up to that promise. I did feel that they didn't care about me, that they were — as far as I was concerned I was an enemy and they didn't care about what happened to me, but I still thought they would live up to this.

"Q. Did you feel that they would — even though it was stated in the letter to you that they would not enter into any agreement, that they still entered in an agreement? I am confused.

"A. I felt verbally they did enter into a — they did; they promised me certain things.

"Q. When?

"A. When I talked to them.

"Q. That was prior to the letters?

"A. That's right.

"Q. Then you got the letters saying that Mrs. Standley had visited her accountant and her accountant had advised her not to enter into any agreement with you and Rick, you understand that?

"A. Yes.

"Q. After that was there any agreement?

"A.  I felt that they still — the agreement that they had verbally had with me was what they meant. I felt that people that give verbal agreements or verbal promises, honorable people back those agreements or those promises."

The March 19, 1971, letter is not so clear as to require the conclusion that plaintiff must have known that the oral agreement had been repudiated. It indicates defendants' unwillingness to sign a written agreement, but it does not expressly or necessarily repudiate any prior agreement. Plaintiff's testimony may be marked by some confusion, but it is not an unequivocal admission that plaintiff understood that defendants "had no intention of fulfilling the verbal agreement" as the trial court concluded.

Her deposition testimony contains one statement to the effect that she thought defendants "were not going along with any of these agreements concerning the ranch." Considered in its context, it is not clear if that statement refers to all agreements or only to the ones relating to the plaintiff's and her children's right to continue to live on the ranch. Moreover, many other statements in plaintiff's deposition indicate more clearly that she did not think that defendants had repudiated their agreement to reconvey a portion of the property to plaintiff. Considered in its entirety, plaintiff's deposition indicates that there is an issue of fact concerning whether defendants had communicated their alleged repudiation to plaintiff. Without regard to plaintiff's affidavit, we conclude that there is a genuine issue of fact as to whether defendants repudiated their agreement and communicated their repudiation to plaintiff. The trial court erred in granting defendants' motion for summary judgment.

Reversed and remanded.