Argued and submitted October 30, 2002, affirmed January 8, 2003

Jedediah AYLETT
and the Estate of Juanita Aylett,
*Appellants,*

*v.*

Earl AYLETT
and Deborrah Aylett,
*Respondents.*

98-CV-090; A114449

60 P3d 1114

Michael J. Morris argued the cause for appellants. With him on the briefs was Bennett, Hartman, Morris & Kaplan, LLP.

Joel DeVore argued the cause for respondents. With him on the brief was Luvaas, Cobb, Richards & Fraser, P.C.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

In this action brought pursuant to ORS 28.010, the trial court granted declaratory judgment in favor of defendants.[1] Plaintiffs appeal, arguing that the trial court erred in enforcing an oral lease between the parties that they contend is unenforceable under ORS 41.580(1)(e).[2] The trial court enforced the oral lease on the basis of defendants' part performance. On appeal, plaintiffs argue as follows: (1) this case is an action at law and the doctrine of part performance is not cognizable in an action at law; and (2) because defendants' actions with respect to the subject properties are not exclusively referable to the oral lease, the doctrine of part performance does not apply. We affirm the decision of the trial court.

The parties own certain farm land (the Aylett property) as tenants in common. That land is located in an arid area of the state and requires extensive irrigation. The irrigated areas are referred to as "circles." The Aylett property contains several circles.

Due to friction between the parties, before 1998, the Aylett property was always leased to third parties to farm. The parties leased the property to Mike Allison in 1993 for five years at a rent of $150 per acre per year. Plaintiffs and defendants each received half of the rent paid by Allison. Allison paid the power and maintenance costs for irrigating, and the parties were responsible for any major repairs to the pumps. When Allison began farming the land, it was in poor condition. Under the terms of the lease, Allison could give up one of the circles on the Aylett property before the end of the

---

[1] The plaintiffs in this case are Jedediah Aylett and the estate of his deceased wife, Juanita. The defendants are Earl and Deborrah Aylett. Earl is the son of Jedediah and Juanita. Jedediah and Earl acted on behalf of their respective spouses in all transactions at issue in this case.

[2] ORS 41.580(1) provides, in part, that "[a]n agreement for the leasing [or real property] for a longer period than one year" is "void unless it, or some note or memorandum thereof, * * * is in writing[.]" Statutes of frauds like ORS 41.580 exist for the purpose of requiring all contracts touching land to be reduced to writing so as to prevent the fraud of setting up a pretended agreement and then supporting it by perjury, as well as to avoid mistakes arising from the interpretation of memory or from the honest mistakes of witnesses after lapses of time. *Brown v. Lord*, 7 Or 302, 309 (1879).

five years if it became unprofitable for him to continue farming it. Late in 1996, he informed the parties that he would be giving up one of the circles for the next crop year. Earl wanted to farm the circle that Allison was giving up and also desired to farm the entire Aylett property at the end of Allison's lease.

In late 1996 or early 1997, Jedediah and Earl met at Granny's Restaurant in Hermiston. There had been bad feelings between them for several years, so the meeting was the first time they had spent time together in a long while. At the meeting, they orally agreed that Earl would farm the circle that Allison was giving up in the final year of his lease. They also made an oral lease agreement for five years that permitted Earl to farm all of the Aylett property at the end of Allison's lease. Plaintiffs, as co-owners of the property, would receive $75 per acre per year in rent, the same as they received under the Allison lease, for all crops, except for potato crops, which were to be negotiated separately. All the other terms were the same as existed under the Allison lease.

The parties were also involved with a parcel of land owned by the United States Government (the Navy property), which is adjacent to the Aylett property. In the past, the parties had leased the Navy property and then had subleased it to Allison under an oral lease with substantially the same terms as the lease on the Aylett property. The only difference was that the rent that Allison paid on the Navy property was less than that on the Aylett property. When the lease held by the parties on the Navy property expired, Earl signed a new lease on that property. Although Earl was the only named lessee on the Navy property, the parties agree that they intended to be co-lessees as to that property. Under their oral agreement, defendants paid rent to plaintiffs on the Navy property on the same terms Allison had.

In the spring of 1997, Earl told Allison that he intended to farm the entire Aylett property at the end of Allison's lease. When Allison's lease ended, Earl began farming the property and obtained more financing from the bank for his operation on the Aylett property. He signed a three-year contract to produce grass seed in September of 1997 and subsequently planted grass seed on the property. Grass seed

is a long-term crop. Defendants also invested $10,000 in upgrading some of the irrigation system on the property. At the same time, Earl began farming the Navy property. Jedediah knew that Earl was farming both properties. If there had been no lease on the Aylett property, it would have been customary for the parties to solicit bids to rent the properties to other farmers. However, neither party did so.

In 1998, the parties made several attempts to enter into a written lease to memorialize their relationship. However, they could not agree on the terms of a lease. In June 1998, plaintiffs filed this action. They sought a declaration that there was no lease between the parties and a judgment for the reasonable rental value of the Aylett property, which they claimed was $300 per acre of which they were entitled to one half. They also brought claims against defendants for breach of contract and for *quantum meruit* regarding the Navy property. Defendants counterclaimed for a declaratory judgment, claiming that they held a farm lease for the Aylett and the Navy properties.

Plaintiffs moved for partial summary judgment under ORCP 47 C. They contended that the parties' oral lease was unenforceable under ORS 41.580(1)(e). They argued to the trial court that, although the court could "look at evidence of 'part performance' or 'reliance' to take the oral agreement out of the scope of the Statute of Frauds," before such evidence could be considered defendants had to "prove the oral agreement clearly and unequivocally by the preponderance of the evidence," a burden that plaintiffs contended defendants could not meet as a matter of law. Defendants agreed with plaintiffs' positions that part performance or reliance could take the agreement out of the statute of frauds and that the oral agreement must be proved clearly and unequivocally by a preponderance of the evidence. The trial court denied plaintiffs' motion and the matter went to trial.

At trial the parties made the same arguments that they had made in the summary judgment proceeding regarding partial performance. Plaintiffs' counsel argued that, before the court could enforce the oral lease, it would have to find (1) that defendants had proved the terms of the lease

clearly and unequivocally by a preponderance of the evidence; (2) that defendants had shown acts of part performance that were exclusively referable to the lease; and (3) that, if the first two burdens were met, the terms of the oral lease as alleged by defendants were fair and reasonable. Plaintiffs' counsel, citing the trial memoranda and arguments on the summary judgment motion, told the trial court that he and defendants' counsel did not "particularly disagree about what law needs to be abided by in this instance." He further stated, "We may disagree about how it all comes out but I think we've agreed, if you look at our various memos, about how the court has to tackle the problem."

██  The trial court agreed with plaintiffs that the oral lease fell within ORS 41.580(1)(e). However, the court ruled in favor of defendants, stating:

> "The court finds that the terms of the oral agreement are proven clear and unequivocally by a preponderance of the evidence. The court has considered the circumstances surrounding the transaction which establishes a strong probability in favor of the accuracy of Earl's testimony.

> "Taking the facts as a whole this court will find that there was a valid oral agreement between the parties. Common sense would find that there was an agreement for Earl to rent the [Aylett] property for a five year term beginning in January of 1998 under the same terms as the Allison lease. The Navy property was a separate ground. Earl was the only lessee named on the lease with the Navy and he did all the farming that this was [Jedediah's] and his intent. The same terms as the Allison lease were going to apply to the Navy ground as well. Without the agreement at Granny's concerning the [Aylett] [p]roperty it would not make sense for [Jedediah] to expect to share in the Navy ground rent when he had little or no legal right to expect a rental payment when he had so little financial input to that property.

> "The court also finds the agreement as being fair and reasonable."

On appeal, plaintiffs argue for the first time that the doctrine of part performance does not apply in this case because this case is an action at law and that doctrine applies only to equitable actions and is not cognizable in actions at

law. As noted above, plaintiffs made a different argument to the trial court. They told the court that the doctrine of part performance was applicable but argued that the facts did not justify its application. They now argue on appeal that the court erred in applying the legal doctrine that both parties, at the time of trial, agreed was applicable. Error that is invited is not a ground for reversal. *Anderson v. Oregon Railroad Co.*, 45 Or 211, 217, 77 P 119 (1904); *Tenbusch v. Linn County*, 172 Or App 172, 177, 18 P3d 419, *rev den*, 332 Or 305 (2001). Because plaintiffs did not argue to the trial court that the doctrine of part performance was not applicable in this case, and because they invited the court to apply a legal doctrine that they now contend is inapplicable, they did not preserve the issue that they raise on appeal. ORAP 5.45(2). Thus, we decline to consider the issue framed by plaintiffs' first argument.

■■  Plaintiffs next argue that the doctrine of part performance cannot take the lease out of the scope of ORS 41.580(1)(e) because defendants' acts were not exclusively referable to the lease. For part performance to take the lease out of the scope of the statute of frauds, the performance must be exclusively and unequivocally referable to the lease. *Strong v. Hall*, 253 Or 61, 70, 453 P2d 425 (1969). That is, the acts of performance "must not be susceptible of being otherwise reasonably accounted for." *Id.* Plaintiffs argue that defendants' conduct on the properties was not exclusively referable to the contract because the parties are cotenants. They explain, "As a cotenant Earl had the right to farm the land, although he was required to pay his [cotenant] the rental value of the latter's interest." They rely on the proposition that, in order for possession to be exclusively referable to the lease,

> "it must be such a possession that an outsider, knowing all the circumstances attending it, save only the one fact, the alleged contract, would naturally and reasonably infer that some contract existed relating to the land of the same general nature as the contract alleged."

*Le Vee v. Le Vee*, 93 Or 370, 375, 181 P 351, 183 P 773 (1919) (quoting *Tonseth v. Larsen*, 69 Or 387, 138 P 1080 (1914)). In other words, where a cotenant claims that a contract for the

transfer of land is taken out of the scope of the statute of frauds by part performance due to possession of the jointly owned land, "there must be such a change of relation between the parties as would challenge the attention of anyone seeing the change and would indicate that some contract had been made." *Le Vee*, 93 Or at 376.

In *Le Vee*, the court held that the plaintiff's possession of the land was not exclusively referable to an alleged contract for the sale of the cotenant's interest because "[n]o visible change was made respecting the possession of the land. Both the plaintiff and his mother lived upon it and operated it just as such holders of the title ordinarily would do." 93 Or at 376. In *Brown v. Lord*, 7 Or 302 (1879), the court reached the same conclusion. In that case, a son sought to enforce an oral agreement by his father to convey land to him. However, because "no one could detect any change in the condition of his affairs which would lead him to suppose that [the father] had ceased to be the owner of the house," the son's conduct was not sufficient to take the agreement out of the statute of frauds. *Brown*, 7 Or at 314.

We turn now to the issue in this case in light of the standards articulated in the above cases. Defendants alleged in their counterclaim for declaratory judgment that they had engaged in part performance of the oral lease, that the trial court should declare that they and plaintiffs had entered into the lease, and that they had no adequate remedy at law. We review their claim *de novo*.[3] ORS 19.415(3). Evidence of part

---

[3] Plaintiffs assert that our standard of review is for errors of law. Defendants contend that we review to determine whether there is evidence from which the trial court could have made its finding and that review is not *de novo*. They rely, in part, on *L & E Farms v. Leonard*, 170 Or App 528, 533-34, 13 P3d 527 (2000). In that case, the defendant argued that, because the plaintiff's claim for declaratory relief was equitable, we should review the disputed factual issues *de novo*. The plaintiff responded that, because its claim was legal in nature, we should affirm the trial court's judgment if there was evidence in the record to support the interpretation of the parties' contract. We observed that the standard of review turned on the nature of the plaintiff's claim for declaratory relief. *Id.* at 532. We reasoned that declaratory judgment proceedings seeking the construction of a contract are legal in nature even though the plaintiff requested some equitable relief in its complaint. The defendant did not dispute that, if we concluded that the plaintiff's claim presented a legal issue, there was evidence to support the trial court's interpretation of the contract. We therefore determined that there was evidence to support the trial court's interpretation and affirmed the trial court. *Id.* at 534. As we did in *L & E Farms*, we look to the nature of the claim (in this case, the counterclaim of

performance need not be undisputed and it may be shown by a preponderance of the evidence. *Howland v. Iron Fireman Mfg. Co.*, 188 Or 230, 309, 213 P2d 177, 215 P3d 380 (1950). We conclude that defendants' conduct cannot be reasonably accounted for in the absence of a lease between the parties. The parties were not on good terms with one another, and the history of their dealings shows that they always had leased the properties to third parties. However, at the end of the Allison lease, the parties did not attempt to find a third party to lease the properties. Unlike in *Le Vee* and *Brown*, there were substantial changes in how the properties were used. While neither cotenant had previously farmed the lands, Earl entered onto the properties and began farming them following the meeting at Granny's Restaurant. He obtained a long-term grass seed contract and began growing crops. Further, he made substantial repairs to and capital investments in the Aylett property without any contributions from Jedediah. An impartial observer, knowing all of the surrounding circumstances, including the past conduct of the parties and their strained relationship, would have concluded that there was a different relationship from the absent-owner cotenancy relationship that had existed previously. Because defendants' use of the properties cannot reasonably be explained without a change in the relationship between the parties, we conclude that defendants' acts of part performance are exclusively and unequivocally referable to the oral lease agreement. For those reasons, the trial court did not err in enforcing the oral lease between the parties.

Affirmed.

---

defendants) to discern our standard of review. We conclude that, in this case, defendants' counterclaim was equitable in nature.