Argued and submitted March 11, affirmed November 26, 2003

Charlene La Due CHAMLEY,
*Respondent,*

*v.*

Timothy GIBBONS
and John Does 1 through 4,
*Defendants,*

*and*

Kim CHAMLEY,
aka Kim Bryson,
*Appellant.*

16-01-04173; A117555

80 P3d 524

Michelle A. Blackwell argued the cause for appellant. With her on the briefs was Hutchinson, Cox, Coons, DuPriest, Orr & Sherlock, P.C.

Loren S. Scott argued the cause for respondent. On the brief were Connie L. Speck, Rohn M. Roberts and Arnold, Gallagher, Saydack, Percell, Roberts & Potter, P.C.

Before Edmonds, Presiding Judge, and Schuman, Judge, and Kistler, Judge pro tempore.

KISTLER, J. pro tempore.

## KISTLER, J.

On summary judgment, the trial court held that John Chamley's former wife was entitled to real property that she and Chamley held in trust. The court entered judgment accordingly, and Chamley's widow appeals. We affirm.

John Chamley (decedent) and Charlene La Due Chamley (plaintiff) were divorced in 1971. After their divorce, they continued to live together and hold themselves out as husband and wife. In 1976, plaintiff and decedent acquired real property in Oregon as "husband and wife." In 1996, plaintiff and decedent executed the "John D. and Charlene La Due Chamley 1996 Trust." Plaintiff and decedent were the settlors, co-trustees, and beneficiaries of the trust. Plaintiff and decedent conveyed their interest in the Oregon property, as well as their interest in California property, to the trust. Under the trust, each trustee was authorized to convey the trust assets. Upon the death of either settlor, the surviving spouse had the power to revoke the trust.

Plaintiff and decedent "separated" in April 1998. In January 1999, decedent married defendant Kim Chamley. In the spring of 1999, plaintiff and decedent discussed dividing the trust property. Plaintiff would receive sole ownership of real estate in California and decedent would receive sole ownership of the Oregon property. No agreement was ever reduced to writing, nor was the Oregon property ever conveyed to decedent. In September 2000, decedent died. On January 8, 2001, plaintiff, in her capacity as trustee, executed a warranty deed, conveying the Oregon property to herself.[1] That same day, she revoked the trust.

After decedent's death, defendant continued to manage and collect rents on the Oregon property. According to defendant, the value of the rents was $1,450 per month. At 11:14 a.m. on February 28, 2001, plaintiff filed this action in Oregon against defendant. She asked the court to declare that she was the fee simple owner of the Oregon property and that she was entitled to sole possession of the property. She

---

[1] The warranty deed was notarized on January 8, 2001, and recorded on January 16, 2001.

also sought damages for a "sum not yet ascertained" based on her allegation that the rental value of the property was $1,400 per month. At 2:55 p.m. on February 28, 2001, approximately three hours after plaintiff filed this action, defendant filed an action in California against plaintiff for reformation of title, declaratory relief, constructive trust, revocation of trust, interference with contract and perspective business advantage, and intentional infliction of emotional distress.[2] Among other things, defendant asked the California court to restore the title to the Oregon property to her as decedent's successor in interest.

Defendant filed a motion to dismiss this action because the California action was pending. *See* ORCP 21 A(3). The trial court denied the motion. Plaintiff then moved for summary judgment. She argued that, under the terms of the trust, the property passed to her. She also sought damages on summary judgment. The trial court granted plaintiff's summary judgment motion and entered an amended judgment awarding plaintiff damages of $17,641.66. Defendant then moved for a new trial, arguing that plaintiff had presented no evidence to support the amount of damages awarded by the court.[3] In support of her motion, defendant submitted evidence that the net income for the property for the relevant period of time was only $6,650.66. The trial court denied defendant's new trial motion.

On appeal, defendant assigns error to (1) the ruling denying her motion to dismiss; (2) the ruling granting plaintiff's summary judgment motion; and (3) the ruling denying her new trial motion. We begin with defendant's second assignment of error—that the trial court erred in denying her motion to dismiss. Under ORCP 21 A(3), a party may move to dismiss an action because "there is another action pending between the same parties for the same cause."[4] An action is

---

[2] We take judicial notice of the filing times of the Oregon and California actions. OEC 201; *see U.S. National Bank v. Heggemeir*, 106 Or App 693, 695 n 2, 810 P2d 396 (1991) (court may take judicial notice of entry of judgment).

[3] Defendant also moved to set aside the judgment because of an asserted mistake. ORCP 71 B(1). Because she has not assigned error to the trial court's ruling denying her motion to set aside the judgment, we refer only to her motion for a new trial.

[4] We review a trial court's ruling on motions to dismiss an action because there is another action pending for errors of law. *Webb v. Underhill*, 174 Or App 592, 597, 27 P3d 148 (2001).

commenced when it is filed with the clerk of the court. *Webb v. Underhill*, 174 Or App 592, 596, 27 P3d 148 (2001). Here, plaintiff filed her action in Oregon three hours before defendant filed her action in California.[5] Because no action was pending when plaintiff filed her action, the trial court correctly denied defendant's motion to dismiss.

■     Defendant's first assignment of error is directed at the ruling granting plaintiff's motion for summary judgment. Defendant advances four reasons why the trial court erred in granting that motion. She argues initially that she was entitled to the property under the terms of the trust. She notes that the trust provides that, "[f]rom and after the death of the predeceased spouse, the surviving spouse shall have the power to alter or amend or revoke the trust estate." Defendant argues that, because she was married to decedent at the time of his death, she was the "surviving spouse" within the meaning of the trust. Plaintiff responds that the meaning of the phrase, viewed in the context of the entire agreement, unambiguously refers to her. *See Yogman v. Parrott*, 325 Or 358, 363, 937 P2d 1019 (1997).

We agree with the trial court that the phrase "surviving spouse," viewed in the context of the entire trust document, refers unambiguously to plaintiff. The trust recites that "John Dixon Chamley and Charlene La Due Chamley, husband and wife, hereinafter sometimes referred to as the 'Settlors,' have transferred and delivered to the Trustees, without consideration, the property described in Exhibit 'A.' " The trust provides that, "[d]uring the joint lifetimes of the Settlors," they shall receive income from the trust. It also provides that, "[u]pon the death of the first of the Settlors to die," the trustee shall "pay out of the trust estate the debts of the predeceased spouse." Finally, it provides that, after the death of the predeceased spouse, the trustee "shall pay to or apply for the benefit of the *surviving spouse* the net income of the trust estate for and during his or her lifetime, payable to such *Settlor* monthly * * *." (Emphasis added.)

---

[5] On appeal, plaintiff argues that we should affirm the trial court's ruling on this ground even though she did not argue it below. In response, defendant has not claimed that she would have created a different record if the issue had been raised below. We conclude that, in these circumstances, we may affirm the trial court's ruling on a ground that was not raised below. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001).

Similarly, in describing the power to amend and revoke the trust, the trust provides that, "during the lifetime of both Settlors," either settlor may revoke various portions of the trust estate after giving the other settlor written notice. The trust then provides that, "[f]rom and after the death of the predeceased spouse, the surviving spouse shall have the power to alter or amend or revoke the trust estate." We agree with the trial court that the trust instrument uses the terms "settlor" and "spouse" interchangeably. Indeed, after referring to paying benefits to the "surviving spouse," it adds "payable to such Settlor monthly." The trust instrument specifies that plaintiff is one of the two settlors and also identifies plaintiff as decedent's wife. Viewing the phrase "surviving spouse" in the context of the whole document, we conclude that only one meaning can reasonably be attributed to that phrase; it refers to the surviving settlor—in this case, plaintiff. *See Yogman,* 325 Or at 363.

■ Defendant advances a second argument. In her reply brief, defendant argues that, even if plaintiff is the surviving spouse, plaintiff revoked the trust before she sought to distribute the assets to herself. Defendant contends that, once plaintiff revoked the trust, the assets reverted to plaintiff and to decedent's estate. Defendant's argument is not properly before us. Defendant did not raise this argument in her opening brief, and we decline to reach it. ORAP 5.45(1); *see Ailes v. Portland Meadows, Inc.,* 312 Or 376, 380-81 and n 4, 823 P2d 956 (1991) (interpreting what is now promulgated as ORAP 5.45(1)); *Hayes Oyster Co. v. Dulcich,* 170 Or App 219, 237 n 20, 12 P3d 507 (2000) (declining to reach an argument not raised in the opening brief); *State v. Stanley,* 153 Or App 16, 20-21, 955 P2d 764 (1998) (same).[6]

■ Third, defendant argues that there was evidence that plaintiff and decedent orally agreed to divide the trust

---

[6] We note that defendant's argument is based on the assumption that plaintiff revoked the trust on January 8, 2001, but did not transfer the trust's interest in the Oregon property to herself until January 16, 2001. The warranty deed, however, recites that plaintiff, acting in her capacity as trustee, transferred the property to herself on January 8, 2001—the same date on which she revoked the trust. Although the warranty deed was not recorded until January 16, 2001, the trust's interest in the land was transferred to plaintiff when she executed the warranty deed on January 8, 2001. ORS 93.850(2); *High v. Davis,* 283 Or 315, 331, 584 P2d 725 (1978).

property when they separated in 1998. Plaintiff responds, among other things, that any oral agreement was never reduced to writing and is barred by the statute of frauds. In her reply brief, defendant argues that *Standley v. Standley*, 81 Or App 274, 725 P2d 397 (1986),

> "supports the proposition that evidence pertaining to an oral agreement and subsequent conduct concerning conveyances of real property may preclude entry of summary judgment. Plaintiff's statute of frauds argument misses the point. The lower court erred in grant[ing] summary judgment in favor of plaintiff because plaintiff's division of property agreement created a genuine issue of material fact about the rightful ownership of the [Oregon] property. Viewing the facts in the light most favorable to defendant, an objectively reasonable juror could have found that plaintiff unlawfully conveyed the [Oregon] property from the Trust to herself."

Although defendant argues that plaintiff's "property agreement created a genuine issue of material fact about the rightful ownership of the [Oregon] property," defendant does not address plaintiff's statute of frauds argument except to say that it "misses the point." In our view, the statute of frauds argument is directly on point. If the statute of frauds bars enforcement of plaintiff's alleged oral agreement to transfer the Oregon property to decedent, then that agreement poses no bar to plaintiff's transferring the property to herself. Here, there is no claim that the agreement was reduced to writing; similarly, in her briefs in this court, defendant has not invoked any of the exceptions to the statute of frauds. *See* ORS 41.580(1)(e); *Aylett v. Aylett*, 185 Or App 563, 568-71, 60 P3d 1114 (2003) (considering exceptions to the statute of frauds).[7] Rather, she relies solely on our opinion in *Standley* to argue that the issue could not be resolved on summary judgment.

Our decision in *Standley* does not advance defendant's argument. The question in *Standley* was whether a 1971 letter put the plaintiff on notice that the defendants had repudiated their oral agreement. 81 Or App at 276-77. We

---

[7] At oral argument, defendant referred to a possible exception to the statute of frauds. That new argument comes too late.

held that the letter "is not so clear as to require the conclusion that [the] plaintiff must have known that the oral agreement had been repudiated" and reversed the order granting the defendants' summary judgment motion. *Id.* at 280. We did not discuss or consider whether a statute of frauds defense could have been asserted or, if it had been asserted, whether it would have succeeded on summary judgment. *Standley* provides no answer to plaintiff's statute of frauds argument in this case. Without an enforceable agreement, plaintiff's third argument fails.

■     Finally, defendant argues that the trial court erred in awarding plaintiff damages of $17,641.66 for the period of time that defendant held the property. She argues that, in arriving at the damages, the trial court incorrectly relied on the gross rather than the net income that the Oregon property produced. Defendant, however, failed to preserve this issue below. In her summary judgment motion, plaintiff asserted that she was "entitled to damages in the amount of $1,450 per month." In the memorandum opposing plaintiff's summary judgment motion, defendant argued that plaintiff was not entitled to the property. Defendant did not argue that, if plaintiff were entitled to the property, any legal or factual issue existed concerning the amount of monthly damages that plaintiff sought. More specifically, defendant did not argue below that plaintiff's request for $1,450 in monthly damages was impermissibly based on the loss of gross rather than net income. Having failed to raise that issue below in response to plaintiff's request for damages on summary judgment, plaintiff is precluded from challenging the trial court's summary judgment ruling on that ground. *See Aylett*, 185 Or App at 569.

■■     Defendant's final assignment of error is directed at the trial court's ruling denying her new trial motion. After the trial court allowed plaintiff's summary judgment motion, defendant moved for new trial because the evidence was not sufficient to support the trial court's damages award. In support of her motion, she submitted evidence showing the income and the expenses for the Oregon property for a one-and-a-half-year period. The denial of a motion for a new trial based on the insufficiency of the evidence is not reviewable on appeal. *Rexius Forest By-Products v. A & R Lumber Sales*,

112 Or App 114, 119, 827 P2d 1359 (1992); *Burke v. American Network, Inc.*, 95 Or App 274, 276-77, 768 P2d 924 (1989).

Affirmed.