301

Argued and submitted November 29, 1993, reversed and remanded
November 16, 1994

## PACIFICORP,
dba Pacific Power & Light Company,
an Oregon corporation,
*Respondent,*

*v.*

## LAKEVIEW POWER COMPANY,
an Oregon corporation,
*Appellant.*

(L91-0074CV; CA A76524)

884 P2d 897

Arden E. Shenker argued the cause for appellant. With him on the briefs were Michael J. Gentry, Robert E. L. Bonaparte and Tooze Shenker Duden Creamer Frank & Hutchison.

Charles F. Adams argued the cause for respondent. With him on the brief were Stephen S. Walters, Mary K. Vander-Weele and Stoel Rives Boley Jones & Grey.

Before Deits, Presiding Judge, and Riggs and Haselton,[*] Judges.

DEITS, P. J.

---

**DEITS, P. J.**

In 1984, plaintiff Pacificorp and defendant Lakeview Power Company entered into a contract whereby plaintiff agreed to purchase the electric power that would eventually be produced at defendant's planned cogeneration plant. In 1988, defendant sued plaintiff, claiming that plaintiff had wrongfully repudiated the contract and prevented the completion of the project. That lawsuit was settled and, in January and February, 1989, the parties entered into four written agreements. One of those instruments, the Power Purchase Agreement (PPA), provided that the contractual relationship would automatically terminate, unless plaintiff gave notice otherwise in writing, if various events did not occur by specified dates. The earliest of those events was for defendant to "obtain an irrevocable commitment for long-term and construction financing" by January 1, 1991. According to plaintiff, defendant failed to meet that condition. Plaintiff therefore ceased its performance and treated the contract as terminated.

In February, 1991, plaintiff brought this declaratory judgment action, contending that it had no further obligation to perform under the agreements because of defendant's alleged default. Defendant counterclaimed, alleging breach of contract and violations of ORS chapter 758, the Oregon analog of the federal Public Utilities Regulatory Policy Act (PURPA). 16 USC § 824a-3. The case was tried to a jury, which found by a general verdict in favor of plaintiff. Defendant appeals, and we reverse and remand.

■ We turn first to plaintiff's cross-assignment, in which it contends that the trial court erred by denying its motion for a directed verdict. It argues that the agreements terminated as a matter of law as a result of defendant's failure to obtain an irrevocable financing commitment, and that there was no evidence that defendant did obtain such a commitment. We disagree. The testimony of defendant's principal that he did have a commitment could support a finding for defendant on that issue.

■ The first three of defendant's 19 assignments challenge, along with related rulings, the court's giving of the following instructions:

"Pacific contends that defendant did not obtain an irrevocable financing commitment by January 1, 1991 and that the defendant missed all of the other contractual deadlines so that the contract has ended.

"* * * * *

"Defendant was required to meet certain deadlines for the construction and operation of the plant in order for the contracts to remain in effect. Specifically, the defendant was required to meet the following contractual deadlines:

"1.   By January 1, 1991, defendant was to have obtained an irrevocable commitment for long term and construction financing of the project;

"2.   By March 1, 1991, defendant must have obtained fuel supply contracts;

"3.   By July 1, 1991, defendant must have obtained all required government permits and authorizations;

"4.   By July 1, 1991, defendant must have begun construction of the project; and

"5.   By July 1, 1994, the project must be operational.

"* * * * *

"The contracts provided that if defendant failed to meet any of these contractual deadlines, that the defendant violated or breached the parties' contracts and that those contracts terminated automatically, including Pacific's obligation to continue making payments to the defendant and to buy electricity from the defendant's plant. Pacific was entitled to insist on strict compliance with the contractual deadlines and was not required to extend or waive them.

"* * * * *

"If you find by a preponderance of the evidence that the defendant failed to meet one or more of the contractual deadlines for construction and operation of the plant that was not excused, then your verdict must be for Pacific, unless you also find that the defendant's failure to meet the contractual deadline was excused.

"* * * * *

"If you find that defendant accepted [a contractually required] payment at a time when it believed Pacific had violated any written or oral contracts between the parties, those violations would not excuse any later failure by the defendant to meet the contractual deadlines."

Defendant argues that, under plaintiff's theory, the agreements terminated as a result of the alleged failure to obtain a financing commitment by January 1, 1991. Consequently, no performance of the other conditions due at later times was possible or required, and the court erred by instructing the jury that defendant could have breached the contract by failing to perform the conditions that did not fall due until after the alleged January 1, 1991, default. Defendant argues that the error was compounded by the further instruction that defendant had the burden of showing that its performance of the later conditions was excused:

> "Defendant contends that if it failed to meet one or more of the contractual deadlines that failure was excused. In order to prevail on its claim of excuse the defendant must prove that Pacific violated a provision of the parties' contract and Pacific's action substantially interfered with defendant's ability to meet the contractual deadlines."

Plaintiff attaches the opposite significance to that instruction. It maintains:

> "[I]t was undisputed in this case that Pacific declared the PPA terminated in January 1991. If the jury found that Pacific's actions constituted an improper repudiation of the PPA and that [defendant] failed to perform [its] subsequent obligations under the PPA, the jury must be presumed to also have found such performance to be excused. [Defendant's] argument assumes that the jury disregarded the instructions concerning excused performance and, accordingly, should be rejected."

We do not agree with plaintiff's view of the impact of this instruction. Both parties ceased performing after plaintiff declared the agreement terminated in response to defendant's alleged failure to meet the financing condition by January 1, 1991. As plaintiff appears to agree, the case was presented and tried on the theory that one party or the other was in violation of the agreement as of January, 1991: defendant if it had not obtained the irrevocable commitment for financing, and plaintiff if defendant had done so and plaintiff had nonetheless terminated the agreement. More fundamentally, if defendant had *not* procured the financing, and its performance was therefore necessarily *not excused* under the instruction, no later performance would have been possible, because the agreement would have terminated automatically

by its terms on January 1. In sum, no performance that was due after January 1 was of any relevance, under the theories that the parties presented. Nevertheless, as defendant contends, the instructions appeared to allow the jury to find for plaintiff if it concluded that defendant had not performed any of those later conditions and had not proved specifically that their non-performance was excused by a breach on plaintiff's part.

■   Plaintiff also contends that any error in the instructions was harmless, because no evidence was presented of a failure by defendant to perform any of the conditions except the procurement of financing. Plaintiff reasons that the jury therefore could not have found defendant liable for "any post-January 1991 breaches." However, the absence of evidence to support a finding that the court instructs the jury it may make is not a basis for holding that the instruction is *harmless*; rather, the absence of evidence to support it is generally a basis for holding that giving an instruction on the issue is *error*. In this case, the cumulative effect of the absence of evidence of any post-January breach by defendant, combined with the instruction that defendant had to prove that its performances of the contractual conditions due after that date were excused by plaintiff's breach, makes plaintiff's harmless error contention untenable. Defendant was effectively required to prove plaintiff's contractual violation in order to avoid a finding that defendant had violated the agreement in ways that there was no evidence to show it had.

Finally, plaintiff's reliance on *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 493 P2d 138 (1972), is misplaced. Defendant correctly points out that, to whatever extent the errant instructions in the two cases are analogous, the sole basis for the holding of harmlessness in *Fulton* was that a curative instruction was given that neutralized the effect of the erroneous one. Here, for the reasons we have noted, the "excused performance" instruction on which plaintiff relies did not cure the problem; it compounded it.[1] The challenged instructions were erroneous and require that we reverse.

Only one of defendant's remaining arguments presents matters that are likely to recur on remand and that, if

---

[1] Plaintiff directs our attention to no other instruction or curative instruction that might have avoided the error or made it harmless.

repeated on remand, could give rise to a significant possibility of reversible error. We will discuss only that argument.[2] Defendant put on evidence of oral agreements, before and after the written agreements, that plaintiff would assist defendant in a number of particulars related to the project. Defendant contends that it took certain actions in reliance on the oral promises, and that plaintiff did not abide by them. However, defendant asserts, the trial court's instructions effectively foreclosed the jury's consideration of that evidence. First, the court instructed that the written agreements were an integration of the parties' entire contract. Second, the court instructed that, for an oral modification to have been consummated, defendant's "detriment" could be adequate consideration only if it was requested by plaintiff, and the parties must have agreed on *all* terms of the modification. The combined effect of the instructions, which defendant asserts were erroneous, was to prevent the jury from considering parol evidence about oral promises that pre-dated the supposedly integrated writings, and to prevent it from finding that a binding modification was effected through the promises that were allegedly made after the written agreements were entered into.

■■    The trial court did not err on the integration question, and no purpose would be served by an extended discussion. *See Abercrombie v. Hayden Corp.*, 320 Or 279, 883 P2d 845 (1994). However, we agree with defendant regarding the modification instructions. If, as in the first trial, the evidence on remand justifies a promissory estoppel instruction instead of the induced detriment instruction that the trial court gave, the jury should be instructed on the estoppel theory if defendant requests. We also agree with defendant that a meeting of the parties' minds on the essential terms of an oral agreement, rather than all terms, is all that is required—to the extent it makes a difference under these facts. *See Kretz et ux v. Howard et al*, 220 Or 73, 83, 346 P2d 93 (1959), and authorities there cited.

Reversed and remanded.

---

[2] We also do not address defendant's eighteenth assignment, because we understand it to challenge an instruction that we have already held erroneous in the preceding discussion.